IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

|  |  |
|---|---|
| DENNIS PELCZYNSKI, DAVID BLACK, MICHAEL ANDERSON, RHODES COMAN, MARC NICHOLS, DANIEL SCHMIDT, and JOHN VINSON, <br><br> Plaintiffs, <br><br> v. <br><br> ORANGE LAKE COUNTRY CLUB, INC. and OLCC SOUTH CAROLINA LLC, <br><br> Defendants. | C.A. No. 4:11-cv-01829-RBH <br><br> **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES** |

## INTRODUCTION

COME NOW Defendants, Orange Lake Country Club, Inc. and OLCC South Carolina LLC ("Defendants") and file this Response In Opposition To Plaintiffs' Motion for Attorney's Fees. This is a dispute about attorney's fees in a case arising under the Fair Labor Standards Act ("FLSA"). This is not a complex case. Seven Plaintiffs allege that they worked "off the clock" and were not paid overtime and minimum wage for their work. The Parties settled the claims of all seven Plaintiffs for $55,000 which is approximately 18% of the amount sought by Plaintiffs. In their Motion, Plaintiffs ask the Court to award them the outrageous amount of $309,110.63 in fees and costs for 915.22 hours of attorney time in a case in which they took only one deposition, served a single, nearly identical set of discovery on each Defendant, engaged no expert witnesses, and never had to appear before the Court. Plaintiffs seek this amount despite being unsuccessful in their initial goal, which was to represent a class of similarly situated individuals. Plaintiffs further demand the absurdly excessive hourly rates of

$400 for a partner, $350 for an associate, and $350 for local counsel in a case arising in Horry County.   Plaintiffs cite no prior fee awards to support these rates and, in fact, cite no prior fee awards whatsoever.

As discussed below, the Court should deny Plaintiffs' request and award them only a fraction of what they are seeking because the number of hours spent on this case and the rates sought by Plaintiffs' counsel are not justified by the facts, Plaintiffs were unsuccessful in pursuing their goal of a collective action, and seven named Plaintiffs settled their claims for a fraction of what they claimed they were worth.   Furthermore, many of the fees incurred were unnecessary and could have been avoided if Plaintiffs had correctly applied the law regarding the calculation of overtime under the FLSA (as they now purport to do in their Motion).   In addition, a significant percentage of the time for which Plaintiffs seek compensation relates to items that are clearly not compensable, including billing for administrative tasks, billing for work on other cases, billing for time spent on unsuccessful claims, and billing for multiple attorneys doing the same thing.   Perhaps most troubling, Plaintiffs' time records contain numerous internal inconsistencies.   As merely one example, Plaintiffs' local counsel seeks compensation for deposition preparation in May for a deposition that occurred three months earlier in February.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiffs Pelczynski, Anderson, Black, and Coman filed this lawsuit as a putative collective action under the FLSA on July 27, 2011.  (ECF No. 1.)[1] Plaintiffs sought to represent a class of current and former timeshare salespeople of Defendant Orange Lake Country Club, Inc. who sold timeshares and "worked more than forty (40) hours per week without receiving

---

[1] Before filing the lawsuit, Plaintiffs signed fee agreements with their attorneys, agreeing to provide their counsel with 33% of any settlement or 40% of any award if the case went to trial. (ECF No. 113-1 - Motion to File under Seal Ex. A.)

payment for overtime at one and a half times their regular rate." (*Id.*) Plaintiffs asserted a single claim for failure to pay overtime which was based on the allegations that Defendant altered its time records to reflect 40 hours of work or less each week or required Plaintiffs to sign "missed punch" forms to avoid paying overtime. (*Id.* at ¶¶ 34-36.) On September 15, 2011, Defendant[2] responded to the Complaint by moving to dismiss Plaintiffs' claims based on its Rule 68 offers of judgment to the named Plaintiffs. On October 13, 2011, Plaintiffs responded to Defendant's Motion to Dismiss by arguing that Plaintiffs' claims were not mooted by the offers of judgment because Plaintiffs were owed significantly more than Defendant offered. (ECF No. 16.) Plaintiffs submitted detailed affidavits from each of the four original Plaintiffs to support their contention that they were owed $116,290.56 in additional wages for overtime worked. (*Id.* at 16.) Plaintiffs argued incorrectly that the overtime rate should be calculated by dividing a Plaintiff's total compensation in any given week by 40 to determine the regular rate and then multiplying that regular rate by 1.5 to determine the overtime rate which is then applied to all hours worked over 40. (ECF No. 16 at 5-6.) In its Reply, filed on October 24, 2011, Defendant demonstrated that Plaintiffs' calculation of overtime was clearly erroneous:

> Most significantly, Plaintiffs' calculations of overtime due are wrong as a matter of law. As a starting point, the FLSA requires employers to pay non-exempt employees a premium rate of one and one-half times their "regular rate" for all time worked in excess of 40 during any given workweek. 29 U.S.C. § 207(a)(1). The FLSA defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee" with certain statutory exceptions inapplicable here. 29 U.S.C. § 207(e). *See also Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ("The keystone of § 7(a) is the regular rate of compensation. On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance.").
>
> The long-standing FLSA regulations clearly explain how to calculate the regular rate of pay. "The regular hourly rate of pay of an employee is determined

---

[2] At this point in the litigation there was only a single Defendant—Orange Lake Country Club, Inc.

by dividing his total remuneration for employment (except statutory exclusions) in any workweek *by the total number of hours actually worked by him* in that workweek for which such compensation was paid." 29 C.F.R. § 778.109 (emphasis added).[3]   It is undisputed that Plaintiffs were paid on commission. (Pls.' Resp. at Ex. A ¶ 6, Ex. B ¶¶ 4-5,  Ex. C ¶¶ 6-7, Ex. D ¶¶ 7-8.) "Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate." 29 C.F.R. § 778.117.  Applying these principles here, each Plaintiff's regular rate of pay is calculated by dividing his total pay (to include commissions) by the number of hours that he <u>actually</u> <u>worked</u> in a particular workweek. This amount is the "regular rate" of pay.

Here, Plaintiffs completely disregarded these long-standing FLSA regulations in their calculations.  Instead of dividing the weekly pay by the number of hours *actually worked*, Plaintiffs divided the weekly pay by 40.  (Pls.' Resp. at 5.)  As a result, Plaintiffs' "regular rate" on which they calculated the overtime rate was much higher than the "regular rate" defined by the FLSA.

In addition to this error, Plaintiffs also erroneously calculated overtime based on their inflated regular rate.  Plaintiffs calculated the overtime rate by multiplying the inflated regular rate by one and a half.  Then, after calculating the overtime rate, Plaintiffs multiplied that rate by the number of hours of overtime allegedly worked to arrive at an amount of overtime due.  This results in a significant windfall to Plaintiffs because they would essentially be getting paid an overtime rate on top of a regular rate for all overtime.  In other words, because the proper method of calculation is to divide the weekly rate by the hours *actually worked,* Plaintiffs are already receiving a regular rate for the overtime hours worked.  To be fully compensated under the FLSA all that is required is that an overtime premium be added to the regular rate for all overtime hours worked.  *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579-81 (1942) (explaining that wage divided by hours worked equals regular rate and that overtime rate equals "fifty per cent additional for the hours actually worked over statutory maximum"); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354-55 (4th Cir. 2011) (applying reasoning of *Overnight Motor* and using fifty percent overtime premium).   Stated differently, an employer must simply pay its employee the difference between the regular rate and the overtime rate because the employee is already receiving a regular rate for the overtime hours.

(ECF No. 20 at 3-4.)   Plaintiffs persisted in their erroneous calculations throughout this litigation, even after Defendant made clear that Plaintiffs' methodology was contrary to established interpretations of the FLSA that have existed since 1942.  Plaintiffs have not cited any authority supporting their method of calculating overtime (none exists) and have not even

---

[3] This regulation has remained unchanged since 1968.

offered any argument for modifying existing interpretations of the FLSA. On November 28, 2011, Plaintiffs moved to amend the Complaint to add three new Plaintiffs (Vinson, Schmidt, and Nichols), an additional Defendant (OLCC South Carolina, LLC), and a second cause of action for failure to pay minimum wage under the FLSA. (ECF No. 23.) The Court granted this unopposed motion on July 12, 2012. (ECF No. 33.)

While Defendant's Motion to Dismiss was pending, on January 4, 2012, Plaintiffs filed a motion for conditional certification of a collective action under § 216(b) of the FLSA. (ECF No. 25.) Defendant opposed Plaintiffs' Motion on the grounds that Plaintiffs' own affidavits established that they were pursuing their claims under different theories of liability and sought widely different amount of overtime which would have to be proven on an individualized basis. (ECF No. 31.) As an additional basis to deny Plaintiffs' Motion, Defendants *again* pointed out that the named Plaintiffs' method of calculating overtime was flawed as a matter of law. (*Id.* at 17.) On July 12, 2012, the Court denied Plaintiffs' motion for conditional certification of a class action, concluding that Plaintiffs and the putative class were not similarly situated such that collective treatment was warranted. (ECF No. 33.)

On July 18, 2012, Plaintiffs filed a second motion to amend the Complaint, which sought to add eight additional Plaintiffs. The Court denied this motion on February 8, 2013. (ECF No. 55.) In July 2012, the Parties held their Rule 26(f) conference and thereafter discovery commenced. During discovery, which lasted eight months from July 2012 until April 8, 2013, Plaintiffs took only one deposition and served each Defendant with a single set of nearly identical interrogatories and requests for production. Plaintiffs responded to nearly identical sets of written discovery served on the seven Plaintiffs and defended the depositions of the Plaintiffs. No other depositions were taken or defended. (Lauderdale Aff. ¶ 6, attached hereto as Exhibit

1.)  Contrary to Plaintiffs' assertion, Defendants did not engage in a "discovery fight." (ECF No. 106 at 7.)  The only discovery motion filed was a motion by Defendants to recover their costs when Plaintiff Coman failed to appear for his deposition.  (ECF No. 75.)  Defendants eventually withdrew that motion when Plaintiff Coman agreed to appear at a later date.  (ECF No. 89.)

In mid-May 2013, counsel for the Parties began discussing potential mediators.  On May 28, 2013, Defendants filed motions for summary judgment for each of the seven named Plaintiffs.  On June 6, 2013, counsel for Plaintiffs emailed counsel for Defendants requesting an extension of time to respond to Defendants' summary judgment motions as well as an extension of the mediation deadline because "we would also like to have the dispositive motion briefing farther along before conducting mediation." (Lauderdale Aff., Ex B.)  In an email dated the same day, counsel for Defendants offered to agree to postpone Plaintiffs' response deadline until after mediation to save Plaintiffs the time and expense of preparing such briefs, but Plaintiffs' counsel refused to extend the deadline and insisted on filing their response briefs before attending mediation.  (*Id.*)

On June 21, 2013, Plaintiffs filed Responses to each of the motions for summary judgment.  Each fifteen-page Response followed the same template, made the same legal arguments, and deviated from the other briefs in only a few paragraphs addressing facts specific to each plaintiff.  (ECF Nos. 76-81.)  One of those paragraphs explained how much overtime each Plaintiff believed he was entitled to.  Again, in each brief, Plaintiffs persisted in their erroneous calculations—dividing the pay by 40 (rather than the number of hours worked) to determine the regular rate and then, essentially double dipping by multiplying a rate 1.5 times the regular rate by all hours worked over 40.  (ECF Nos. 76 at 11; 77 at 11; 78 at 11, 79 at 10; 80 at

11; ECF No. 81 at 11, 93 at 18.)  Using this incorrect method of calculating overtime, the seven

Plaintiffs claimed in their briefs to be entitled to a total of $296,562.72.

The Parties mediated this case on August 1, 2013, and reached an agreement to settle the

claims of the seven Plaintiffs for a total of $55,000, nearly one sixth (or 18%) of the amount to

which Plaintiffs alleged that they were entitled a few weeks earlier.  (ECF No. 102.)   The Parties

were unable to reach an agreement regarding attorney's fees.  On September 26, 2013, Plaintiffs

filed their Motion for Attorneys' Fees, seeking $309,110.63 in fees in costs for 915.22 hours of

attorney time—six times more than what they recovered for their clients.   As discussed below,

Plaintiffs' incredible and extravagant request should be denied.

## LEGAL STANDARD

Plaintiffs' Motion for Attorneys' Fees is properly analyzed using the lodestar method.

This is a three-step process in the Fourth Circuit.  First, "a district court must determine the

lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the

*Johnson/Barber* factors when making the lodestar determination."  *Grissom v. Mills Corp.*, 549

F.3d 313, 320 (4th Cir. 2008).  The *Johnson/Barber* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability'
> of the case; (11) the nature and length of the professional relationship with the
> client; and (12) awards in similar cases.

*Eastern Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561 n.5 (4th Cir. 2013).  Second,  "after

calculating the lodestar figure, the 'court then should subtract fees for hours spent on

unsuccessful claims unrelated to successful ones.'"  *Grissom*, 549 F.3d at 321 (*quoting Johnson

v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)).  Third, "[o]nce the court has subtracted the

fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* Both the Supreme Court and the Fourth Circuit have emphasized that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Abram & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010); *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). The party seeking an award of attorney's fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## LEGAL ARGUMENT

### I.    Calculating the Lodestar

#### A.    The Hourly Rates of Plaintiffs' Counsel Are Unreasonable And Unwarranted

The hourly rates demanded by Plaintiffs' counsel are unprecedented. Plaintiffs ask the Court to award a fee of $400 per hour for a partner with 17 years of experience, $350 per hour for local counsel who has been practicing for eight years, and $350 an hour for an associate with eight years' experience. For the reasons discussed below, the Court should adjust these rates downward to more accurately reflect the market rate in the Florence Division in the District of South Carolina.

##### 1.    Plaintiffs Cannot and Have Not Justified The Extravagant  Rates Requested in The Motion

It is Plaintiffs' burden "to establish the prevailing market rate of attorneys' fees in the relevant community where the district court sits." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). Thus, Plaintiffs must demonstrate that the rates they are seeking in this case reflect the rates customarily charged by attorneys in the Florence Division for similar work. *See, e.g., Grissom*, 549 F.3d at 321 ("[T]he community in which the court sits is the first

place to look to in evaluating the prevailing market rate"); *H & C Corporation v. Puka Creations, LLC,* No. 4:12-13-RBH, 2013 U.S. Dist. LEXIS 73707 at *4 (D.S.C. May 24, 2013) (Harwell, J.) (determining appropriate hourly rate based on "the Court's knowledge of hourly rates in the community");[4] *Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 U.S. Dist. LEXIS 149761 at *25 (D. Md. Oct. 17, 2012) (citing *Grissom* and noting "The relevant community in the instant case is Baltimore, Maryland, where this Court sits").   Plaintiffs have not met this burden.

Contrary to Plaintiffs' assertion, the relevant market rates in Houston, Texas are irrelevant to this case arising out of Myrtle Beach.  The Fourth Circuit has clearly explained that the relevant market rate for calculating attorney's fees is the location where the Court sits.  *See, e.g., Robinson*, 560 F.3d at 244 (explaining that plaintiff must establish the "prevailing market rate of attorneys' fees in the relevant community where the district court sits" and rejecting argument that rate for Washington, D.C. attorneys was necessarily reasonable for Alexandria, VA); *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009) ("Also, the BRB should explain how it determines a reasonable rate within the relevant geographic market. Gillelan argues that the BRB was constrained to consider the Laffey matrix because he is a Washington, DC attorney.  We disagree, for the mere fact that Gillelan practices in Washington, D.C. is insufficient to accord him that market, let alone any rate within it").[5] Because the relevant market is the Florence Division, the two district court opinions from Texas

---

[4] Copies of all unpublished opinions are attached hereto as Exhibit 3.

[5] Even if Houston rates applied, which they do not, a report published by the State Bar of Texas in 2011, found that the median rate for an employment attorney in Houston was $263 an hour, and that the median rate for a Houston attorney with Mr. Trang's experience level was $277, while the median rate for Mr. Iwata's experience level was $227.  *See* State Bar of Texas, 2011 Hourly Fact Sheet, available at http://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends (last accessed October 8, 2013).

that Plaintiffs rely on to support their position have no bearing.  Furthermore, even if relevant,

the attorneys in both Texas cases did not actually receive the high rates that they sought because

the court in both cases reduced the amount of attorneys' fees in light of the *Johnson* factors.  *See*

*Black v. SettlePou, P.C.*, 2012 U.S. Dist. LEXIS 120506 at *11-14 (S.D. Tex. Aug. 24, 2012)

(reducing fee award to $45,000 where plaintiff sought $232,400.81)[6]; *Villegas v. Regions Bank*,

2013 U.S. Dist. LEXIS 1690 (Jan. 4, 2013) (reducing fee award from $16,537.50 to $13,230).

Plaintiffs fail to cite any case law from South Carolina to justify the fees that they are seeking

because there is no such case law.[7]

Plaintiffs' counsel also included their own affidavits to try to justify the rates of $400 for

a 17-year partner and $350 for an associate and for local counsel.  But, such self-serving

affidavits are insufficient to carry Plaintiffs' burden.  *See Robinson*, 560 F.3d at 246 ("Moreover,

we will not rely on the hourly rates attested to by Mr. Blankenship because his affidavit, standing

alone, is not sufficient evidence of the prevailing market rates");  *Dormeyer v. Comerica Bank*,

1999 U.S. Dist. LEXIS 12270 (N.D. Ill. Aug. 5, 1999) ("Like other courts, this court will not

accept an attorney's self-serving affidavits to determine the market rate for his work or the work

of his associates"); *Uphoff v. Elegent Bath, Ltd.*, 176 F.3d 399 408 (7th Cir. 1999) (finding that

---

[6] Counsel for the plaintiffs in *Black* practice in Dallas, Texas—a market which also has no
relevance to Plaintiffs' fee petition.  *Id.*
[7] Other cases cited by Plaintiffs are also readily distinguishable.  In *Hadrick v. Airway Freight
Systems, Inc.*, 2000 U.S. Dist. LEXIS 2674 (N.D. Ill. 2000), the defendant did not oppose the
plaintiffs' fee request after the Court granted summary judgment in favor of plaintiffs.  In *Smith
v. Voorhees College*, 2008 U.S. Dist. LEXIS 50003 (D.S.C. 2008), the plaintiffs received a
favorable jury verdict in a discrimination case and were represented by Columbia Attorney Herb
Louthian, who was admitted to the South Carolina Bar in 1959
(http://www.scbar.org/MemberResources/MemberDirectory.aspx).  Similarly, in *Harrison-Belk
v. Rockhaven Community Care Home,* 2008 U.S. Dist. LEXIS 61933 (D.S.C 2008), the plaintiffs
obtained summary judgment on some claims and jury verdicts on their remaining claims.  The
plaintiffs in that case were represented by Lovic Brooks, III, who was admitted to the South
Carolina Bar in 1977 and is a certified employment law specialist (http://www.scbar.org/
MemberResources/MemberDirectory.aspx).

attorney affidavits were "of little value as they are entirely self-serving").  Tellingly, Plaintiffs' counsel do not state that they have ever been awarded the rates that they are seeking by any court nor do they allege that they have ever been paid these rates by *any* clients.  (ECF Nos. 106-2, 106-3, and 106-6.)   Thus, the rates described in the affidavits of Plaintiffs' attorneys are simply wishful thinking and are not warranted in this case.  *See also Hensley*, 461 U.S. at 434 ("[H]ours that are not properly billed to one's client are . . . not properly billed to one's adversary pursuant to statutory authority").

The only other authority provided by Plaintiffs to support their rates are the affidavits of Todd Ellis, a Columbia lawyer, and John Leiter, a Myrtle Beach lawyer, who aver that the rates of $400 an hour for a 17-year partner and $350 an hour for an eight-year associate are "reasonable."  (ECF No. 106-7 and 106-8.)    Again, neither Mr. Ellis nor Mr. Leiter allege that they have ever been awarded these rates by any South Carolina Court nor do they allege that any client has ever paid them such a rate.  Further, at least one of the affiants has a personal interest in securing the highest rate possible for Plaintiffs' counsel.  Mr. Ellis admits that he is currently co-counsel with Mr. Luse in another FLSA case and, thus, presumably the higher the rate Mr. Luse receives in this case, the higher the rate that Mr. Ellis and Mr. Luse could receive in their other case.  Mr. Ellis also declares that the "rate charged is reasonable given those charged by certified specialists in employment law with similar skills and experience."  (ECF No. 106-7.) However, neither Mr. Ellis, Mr. Leiter, nor any of Plaintiffs' attorneys purport to be or are certified specialists in labor and employment law.  Mr. Leiter does not purport to have ever handled an FLSA case.  Thus, the affidavits of Mr. Ellis and Mr. Leiter do not carry Plaintiffs' burden or justify the hourly rates Plaintiffs' are seeking.

In contrast, Defendants have provided the affidavit of Vance Bettis, an experienced South

Carolina employment lawyer with more than 30 years' experience who is a certified specialist in Labor and Employment law who stated that, given his experience, the rates Plaintiffs' counsel were requesting are substantially in excess of rates charged by South Carolina attorneys of comparable experience in the relevant market area. (Bettis Decl. ¶ 6, attached hereto as Exhibit 3.) Specifically, Mr. Bettis states that partners in his firm (ranging from 15 years to 40 years of experience and who are all certified specialists in employment and labor law) charged rates ranging from $150 to $250 per hour during 2013. (*Id.* at ¶ 4.) Mr. Bettis also stated that an attorney in his firm who was admitted in 2005 (comparable in years of practice to Iwata and Luse) was charged at a rate of $150 to $175 per hour during 2013 and that such rates are reasonable. (*Id.* at ¶ 5.)

2.    A significantly Lower Rate Is Warranted In Light of The *Barber* Factors

Consideration of the *Barber* factors provides additional evidence that the rates Plaintiffs' counsel seek in this case are unreasonable. At least six of the twelve *Barber* factors bear directly on the issue of the reasonableness of the rates sought by Plaintiffs' counsel including: (1) novelty and difficulty of questions; (2) requisite skill; (3) the experience and reputation of the attorneys; (4) customary fee; (5) fee awards in similar cases; and (6) whether the fee is fixed or contingent. *See Eastern Associated Coal Corp.*, 724 F.3d at 561 n.5 (4th Cir. 2013) (listing factors). Each of these is addressed below.

a.    *Novelty and Difficulty of Questions, Requisite Skill, and Experience and Reputation of the Attorneys*

This is not a complex case. Plaintiffs seek additional wages for time allegedly worked "off the clock" under the minimum wage and overtime provisions of the FLSA. (ECF No. 44.) Stated differently, Plaintiffs assert two causes of action arising under a single federal statute. (*Id.*) As described by another district court in this circuit, such claims under the FLSA are

"relatively straightforward."  *Jackson v. Estelle Place, LLC*, No. 1:08-984, 2009 U.S. Dist. LEXIS 39837 (D.S.C. May 8, 2009).  Numerous courts have concluded that "FLSA cases, by their simpler nature, should involve a lower fee" than other types of employment litigation. *Dormeyer v. Comerica Bank*, 1999 U.S. LEXIS 12270 (N.D. Ill. 1999); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999) ("issues under the FLSA are not unusually complicated").

The procedural history of this case confirms its relative lack of complexity.  Discovery lasted only 8 months, during which Plaintiffs served a single set of nearly identical discovery requests on each Defendant, deposed only one witness for a total of 4 hours,[8] and did not identify any expert witnesses or produce any expert reports.  The Parties have not had to appear before the Court for any hearings, and the case did not go to trial.  (Lauderdale Aff. ¶ 6.)

Plaintiffs argue that the case involved two "novel and challenging questions," namely whether Plaintiffs' claims were mooted by offers of judgment and whether the Court's denial of the motion for conditional certification required that Plaintiffs' claims be severed.  (ECF No. 107-1 at 5.)  There is recent guidance from the Fourth Circuit regarding the impact of offers of judgment in a collective action, *see Simmons v. United Mortgage & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011), as well as recent guidance from the Fifth Circuit regarding severance of FLSA claims, *see Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516, 521 (5th Cir. 2010). Moreover, even assuming that these two issues were novel, Plaintiffs' counsel spent only 3% or 25.14 hours of their time working on these issues.  The overwhelming majority of counsels' hours were spent on depositions, written discovery, and summary judgment briefs—tasks that are

---

[8] With the exception of Dennis Pelczynski, who was deposed first, each of the Plaintiffs' depositions was also short.  Coman's deposition was 5:33; Vinson's was 2:58; Anderson's was 2:25; Black's was 1:59; Schmidt's was 3:18; and Nichols' was 5:22.  Transcript excerpts supporting these figures from each of Plaintiff's depositions are attached hereto as Exhibit 2.

routine components of civil litigation. Thus, the relative lack of complexity of this case and the skill required to prosecute it fails to justify the rates Plaintiffs seek.

b.     *Whether the Fee is Fixed or Contingent*

A further reduction in any award of fees to Plaintiffs' counsel is warranted because Plaintiffs' counsel took this case on a contingency fee basis. Though Plaintiffs do not highlight this fact in their brief, they admit that they took this case on a contingency. (ECF No. 107-1 at 7.) Under the terms of their contingency fee agreement, Plaintiffs' counsel are entitled only to 33% of any recovery that their clients receive (40% if the case goes to trial).[9] (ECF No. 113-1, Motion to File Under Seal Ex. A.) The fee agreement is silent as to any award of statutory attorney's fees. (*Id.*) Thus, the clear expectation of Plaintiffs' counsel at the outset of this litigation was to receive no more than 33% of any settlement that they obtained for their clients. Rather than request a reasonable hourly rate and compensation for a reasonable number of hours that would more closely approximate a 33% contingency, counsel demands a fee that is 562% of what their client's received. This demand is inconsistent with the sixth *Barber* factor and should be reduced to more reflect counsel's expectation of a 33% attorney's fee. *See, e.g., Walker v. Dovetails, Inc.*, No. 3:10-526-HEH, 2011 U.S. Dist. LEXIS 18537 at *7-10 (E.D. Va. Feb. 24, 2011) (awarding plaintiff's attorney $4,000 or 40% of the $10,000 award to plaintiff in FLSA case based on a contingency fee agreement, which defined the expectations of plaintiffs' counsel). Here, the expectations of Plaintiffs' counsel as explained to their clients was to receive only 33% of any settlement (which here, would be $18,333 a not the $310,000 that Plaintiffs

---

[9] Defendants requested the fee agreements during discovery, but did not receive them until Defendants requested them again following the filing of Plaintiffs' Motion. At that time, Plaintiffs produced redacted copies of the fee agreements, which were marked "Confidential" pursuant to the Confidentiality Order entered by the Court. Thus, it is unclear whether Plaintiffs' counsel has already received some amount of fees from their clients. To the extent that they have, that amount should, at a minimum, be deducted from the fee award.

seek).    Accordingly, this factor supports a much lower hourly rate and overall lodestar than Plaintiffs' demand.

c.        *Customary Fee and Fee Awards in Similar Cases*

Opinions from this Court and other judges in the District of South Carolina make clear that the customary fee for an employment lawyer in the District of South Carolina is well below the fee Plaintiffs seek.  South Carolina federal judges have consistently awarded fees in the range of $250 to $300 for partners with far more experience than Mr. Tran and fees from $135 to $175 for associates and attorneys with experience similar to Mr. Iwata and Mr. Luse.  For example, in a case Plaintiffs cite throughout their Motion, *Smith v. Voorhees College*, No. 5:05-1911-RBH, 2008 U.S. Dist. LEXIS 50003 at *13-14 (D.S.C June 27, 2008) (Harwell, J.), this Court awarded a 49-year veteran lawyer with 29 years of trial advocacy teaching experience the rate of $250 per hour in a case that went to trial.  More recently, in 2011, the Court approved the rate of $250 an hour for a Columbia attorney with 21 years of experience in a complex trademark and unfair competition lawsuit under the Lanham Act.  *Firehouse Restaurant Group, Inc. v. Scurmont LLC*, No. 4:09-618-RBH, 2011 U.S. Dist. LEXIS 119610 (Oct. 17, 2011) (Harwell, J.) and *Firehouse*, Dkt. No. 227-2.  A year later in 2012, the Court approved the same rate for six hours of work in a case in which the defendant failed to appear, and, thus, fees were not contested. *See Joe Hand Promotions, Inc. v. King*, 4:12-245-RBH, 2012 U.S. Dist. LEXIS 151780 at *11 (D.S.C. Oct. 23, 2012).  Earlier this year, the Court approved the rate of $265 per hour for a Columbia intellectual property lawyer with 23 years of experience who had requested the rate of $450 an hour.  *H & C Corporation, Inc. v. Puka Creations, LLC*, No. 4:12-13-RBH, 2013 U.S. Dist. LEXIS 73707 (D.S.C. May 24, 2013).  Just last month, in a complex construction litigation case that went to trial the Court approved the rates of $300 an hour for Frank Elmore, "an experienced

15

construction law litigator with a reputation as a litigation in South Carolina construction law," $250 for the other partners in his firm, and $175 for his associate. *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, No. 4:09-1379-RBH, 2013 U.S. Dist. LEXIS 138941 at *70-72 (D.S.C. Sept. 27, 2013).

Though there are only a few opinions from the District of South Carolina considering fee petitions in FLSA cases, fees have been awarded at rates much lower than what Plaintiffs are seeking. Most recently, Judge Childs approved the rate of $300 per hour for thirty-year employment law veteran and Charleston attorney Nancy Bloodgood, $200 per hour for her co-counsel, and $75 an hour for a paralegal in a case that was certified as a collective action and that included a five-day jury trial and numerous post-trial motions. *Atkinson v. House of Raeford Farms, Inc.*, 6:09-1901-JMC, 2012 U.S. Dist. LEXIS 99386 (D.S.C. July 18, 2012). In a case cited throughout Plaintiffs' brief, Judge Currie awarded Lovic Brooks, a thirty-plus year employment lawyer who is also a certified specialist in labor an employment law an hourly fee of $290 in an FLSA case that also went to a jury trial. *Harrison-Belk v. Rockhaven Comm. Care Home, Inc.*, 2008 U.S. Dist. LEXIS 67268 at *7 (D.S.C. July 31, 2008). Judge Currie approved the rate of $95 for Mr. Brooks' paralegal. *Id.* In contrast to the affidavits submitted by Plaintiffs' counsel here, Judge Currie found that the apparently high rate of $290 was reasonable for Mr. Brooks because it was "consistent with the rates this attorney charges his hourly clients." *Id.* In another FLSA putative collective action involving Mr. Brooks, Judge Anderson awarded Mr. Brooks the rate of $290 and his associate the rate of $135. *Self v. Dennis*, No. 3:06-1123-JFA, slip op. ECF No. 27 (D.S.C. Mar. 14, 2007).

These cases establish that a reasonable hourly rate for an attorney such as Mr. Trang with 17 years of experience is no more than $250 an hour. Attorneys who have commanded higher

16

rates in this District such as Mr. Elmore, Mr. Brooks, and Ms. Bloodgood have all been practicing law twice as long as Mr. Tran. The cases further establish that a reasonable rate for Mr. Iwata, an associate with eight years' experience, is no more than $175 an hour. *See Crossmann Cmtys. of N.C., Inc*, 2013 U.S. Dist. LEXIS 138941 at *70-72 (approving rate of $175 for associate); *Self v. Dennis*, No. 3:06-1123-JFA, slip op. ECF No. 27 (D.S.C. Mar. 14, 2007) (approving rate of $135 for associate). Because Mr. Luse also has eight years of experience and because Plaintiffs evidently value his services at the same rate as Mr. Iwata, a rate of no more than $175 is also appropriate for Mr. Luse.[10] As further evidence that these rates are consistent with the customary fee charged by attorneys in this Division, the attorney who mediated this case who is a certified specialist in employment law with 18 years of experience charged the Parties an hourly rate of $250. (Lauderdale Aff. ¶ 11.) Contrary to the rates proposed by Plaintiffs, the rates Defendants propose are consistent with the *Barber* factors, considering the experience of Plaintiffs' counsel, the skill required to litigate a FLSA case, the absence of novelty and complexity of the issues, the customary fee, the contingency fee agreement, and the fee awards in similar cases.

## B.    Plaintiffs Seek Compensation for An Unreasonable Number of Hours

In addition to demanding an unprecedented rate, Plaintiffs' seek compensation for a facially unreasonable 915.22 attorney hours. Again, this was not a complex or lengthy case. The Court did not certify it as a class action. It did not go to trial. The parties never appeared in person before the Court. Discovery lasted eight months and proceeded without difficulty. Plaintiffs served only one set of written discovery on each Defendant, took only one four-hour

---

[10] It is unclear from the record whether Mr. Luse is currently a partner or an associate. He filed this case as a solo practitioner, but he has since joined a new law firm. In any event, it is undisputed that he has eight years of experience. (ECF No. 106-3.)

17

deposition, did not retain an expert witness, and settled the case well before trial. Furthermore, as discussed below, this case could have been even shorter and less expensive had Plaintiffs not persisted in their erroneous method of calculating overtime. In addition, over 30% of the fees sought could have been avoided if Plaintiffs had accepted Defendants' offer to postpone their summary judgment response briefs until after mediation which occurred less than a month after Plaintiffs' responses were due. Finally, as developed below, over 270 of the hours reflected on the time records are not billable because they involve attorneys or paralegals performing purely secretarial tasks, relate to unsuccessful issues, are excessive, are vague, or are duplicative.

1.    Plaintiffs Prolonged This Litigation By Stubbornly Pursuing An Incorrect
       Method of Calculating Overtime under The FLSA

As an initial matter, though not apparent on the face of counsel's time records, one cannot overlook the fact that many of the time entries would not exist if Plaintiffs had acknowledged, as they now seem to do, that they were improperly calculating the overtime rate under the FLSA until mediation in this case. Plaintiffs persisted with this erroneous application of the law even after Defendants cited the correct law in numerous court filings which, among other things, pointed out that Plaintiffs' counsel were misrepresenting the law. As outlined above, from their initial response to Defendant's motion to dismiss filed over two years ago, to their responses in opposition to Defendants' motions for summary judgment filed just over two months ago, Plaintiffs have consistently relied on an erroneous method of calculating overtime under the FLSA. Plaintiffs contend that overtime should be calculated by dividing a plaintiff's pay during any given workweek by 40 to determine the regular rate. Plaintiffs then argue that the regular rate should be multiplied by 1.5 to determine an overtime rate which is due for all hours worked over 40. (ECF No. 16 at 5; ECF No. 25 at 2-3; ECF Nos. 76 at 11; 77 at 11; 78 at 11, 79 at 10; 80 at 11; ECF No. 81 at 11, 93 at 18.) In fact, as Defendants explained two years

18

ago in their reply brief and pointed out again in their opposition to plaintiffs' motion for class certification, and, again in the summary judgment briefing, longstanding FLSA regulations provide that the regular rate is determined by dividing one's total compensation (including commissions) by the number of hours *actually worked*. *See* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid"). Then, an overtime premium of 50% of the regular rate is added to all hours worked over 40. The Supreme Court clearly settled this question of law (if it ever was a question) as long ago as 1942! *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579-81 (1942) (explaining that wages divided by hours worked equals regular rate and that overtime rate equals "fifty per cent additional for the hours actually worked over statutory maximum").

Plaintiff counsel's error significantly increased the perceived value of their clients' claims, correspondingly reducing the likelihood of settlement.[11] Using their erroneous method of calculating overtime, Plaintiffs argued in opposition to Defendants' individual Motions for Summary Judgment that they were entitled to a total of $296,562.72 in overtime. (ECF Nos. 76

---

[11] The impact of Plaintiffs' error is perhaps best demonstrated by example. In his affidavit filed in opposition to Defendants' motion to dismiss, Plaintiff Pelczynski declared that he worked as much as 60 hours a week during most weeks of his employment and that he was paid an average of $2,042 per week. (ECF No. 16-1.) Using Plaintiffs' erroneous method, in any given week, Plaintiff Pelczynski's regular rate would be $2,042 divided by 40 or $51.05 per hour.[11] His overtime rate for the 20 hours of overtime would be $76.58, which, when multiplied by 20 hours results in $1,531 in overtime in a single week. In contrast, if you apply the law as stated in the FLSA regulations, the wages earned should be divided by the hours he allegedly worked ($2,042 ÷ 60), providing a regular rate of $34.03. The overtime premium to be applied to the 20 hours worked over 40 would be half that or $17.01 per hour, resulting in only $340.20 in overtime. When this error is carried over the course of 32 weeks of employment, the value of Pelczynski's asserted claim increases from $10,886.40 (applying the correct method) to $48,992 (applying Plaintiffs' wrong method)—a difference that unquestionably impeded the early settlement of the claims of all seven Plaintiffs.

at 11; 77 at 11; 78 at 11, 79 at 10; 80 at 11; ECF No. 81 at 11, 93 at 18.)   Plaintiffs ultimately settled their claims for a fraction of that amount.   Now, for the first time on record in this litigation and evidently in an effort to increase the amount of attorneys' fees they recover, Plaintiffs concede that their "time and a half" formula was wrong.   (ECF No. 107-1 at 10.) Plaintiffs shamelessly contend that if you use the formula that Defendants have been advocating throughout this litigation that Plaintiffs actually recovered most of the overtime that they were owed.   Had Plaintiffs taken this position two years ago, they undoubtedly would not be asking to be paid for almost 800 attorney hours because this case could have been resolved at that time.

2.   <u>Plaintiffs' Attorneys Seek Compensation For Things That Are Clearly Not Billable</u>

*a.   Attorneys or Paralegals Performing Administrative or Secretarial Functions*

Plaintiffs seek compensation for 2.55 attorney hours and 47.8 paralegal hours valued at $5,481.50 for time spent doing things that are clearly administrative.   For example, Mr. Luse seeks compensation for printing off an order from the Court, printing file stamped copies of documents that he filed for his files, and driving to the clerk's office to pick up copy of an unrelated lawsuit filed against Defendant.   (ECF No. 106-4 at 10-14.)   Mr. Luse's assistant billed a significant amount of time scanning documents and uploading to their dropbox, evidently for Mr. Tran and his firm to review.   A chart summarizing these entries and other clerical entries is attached.   (Lauderdale Aff. Ex. D.)   These are not the types of tasks for which Plaintiffs would charge their clients, and, thus, they are not billable.   *Hensley*, 461 U.S. at 434; *see Kabore v. Anchor Staffing, Inc.*, No. 10-3204, 2012 U.S. Dist. LEXIS 149761 at *10-11 (D. Md. Oct. 17, 2012) (noting that tasks such as scanning and processing settlement checks are clearly clerical and "may not be awarded as attorneys' fees").

b.       *Vague Entries*

Plaintiffs also ask the Court to award fees based on entries that are vague or ambiguous. "A time sheet is sufficiently detailed if it 'consists of an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent." *Grayson v. Register Tapes Unlimited, Inc.*, No. RWT 11-887, 2013 U.S. Dist. LEXIS 66348 (D. Md. May 9, 2013). Plaintiff counsels' time entries must "contain sufficient detail to justify the award of attorneys' fees." *Id.* At least twelve of Mr. Luse's time entries are too vague to justify a fee. (Lauderdale Aff. Ex. E.) Mr. Luse seeks compensation for 15.55 hours of attorney time in which he "conducted legal research," "reviewed file," and "worked on case." In these examples he failed to explain what he was researching, reviewing, or working on, and so he has failed to carry his burden of showing his entitlement to a fee for this time. Moreover, a few of his vague entries involved time spent on other matters. For example, one entry states, "legal research for OLCC case and various legal matters." This time is most certainly not chargeable to Defendants in this case. *See also Jackson v. Estelle Place, LLC*, 2009 U.S. Dist. LEXIS 39837 (E.D. Va. May 8, 2009) ("Fees should not be awarded . . . where it is unclear why the hours were expended"); *Dormeyer*, 1999 U.S. Dist. LEXIS 12270 *15 (finding that plaintiffs' attorneys had failed to "provide credible billing records" when entries "[did] not detail the general subject matter").

c.       *Duplicative Billing by Counsel*

Throughout this litigation, all three Plaintiffs' attorneys have billed at least something for almost all of the work performed for their clients. Such staffing has most certainly resulted in redundancies that have inflated the number of hours for which they seek compensation. As the Eleventh Circuit has pointed out, "Redundant hours generally occur where more than one attorney represents a client." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d

21

1292, 1301-02 (11th Cir. 1988); *Dormeyer*, 1999 U.S. Dist. LEXIS 12270 *15 (finding multiple attorneys billing for the same task was excessive and that billing records were therefore not credible).

Though there is not sufficient time or space to discuss all of the redundancies in Plaintiffs' bills, a few examples stand out as particularly egregious. For example, Mr. Luse double-billed his time during mediation. He billed 12 hours for attending the mediation on August 1, 2013, and 2 hours for mediation prep the same day (ECF No. 106-4 at 2), but he also billed separately for 2.55 hours of phone calls with the Plaintiffs who did not attend mediation. (ECF No. 106-4, 5.) This time is clearly not compensable. Mr. Tran also attended the mediation and billed for his time. Mr. Iwata did not attend the mediation, but he still billed 8.4 hours of time. (ECF No. 106-1 at 11.) Three attorneys billing a full day's time for one mediation is excessive and unnecessary. At a minimum, the Court should not compensate Plaintiffs' counsel for the 8.4 hours Mr. Iwata claims to have spent on mediation. (Lauderdale Aff. Ex. F.)

> d.    *Other Unbillable Entries*

Plaintiffs also seek compensation for time spent working on another lawsuit currently pending against Defendants, *Bright v. Orange Lake Country Club, Inc.*, Case No. 4:13-1877-RBH. Such fees are clearly not compensable.[12] *See, e.g., Tattoo Art, Inc. v. Tat Int'l, LLC*, 2012 U.S. Dist. LEXIS 127775 (E.D. Va. Sept. 7, 2012). Thirteen of Mr. Luse's time entries totaling 2.6 hours relate to the *Bright* lawsuit. A summary of these entries is attached, and includes such things as initial consultations with some of the *Bright* Plaintiffs. (Lauderdale Aff. Ex. G.) In addition, Mr. Iwata spent .75 hours drafting a motion to compel on August 31, 2011, which was

---

[12] Such entries further demonstrate that the vague entries discussed above, such as "worked on case," "conducted legal research," and "reviewed file," cannot be compensable. It is not clear whether such entries were billed to this case or some other case.

before Defendants had even filed a responsive pleading. (ECF No. 106-1 at 2.) He also spent 4.5 hours researching the retail or service establishment exemption, even though Defendants have never and admitted in the initial motion to dismiss that OLCC employees were non-exempt, hourly employees. (ECF No. 8-2.) Mr. Luse spent at least 1.3 hours reviewing documents that he filed on behalf of his clients *after* he filed the documents. (ECF No. 106-4 at 1, 3.) Presumably, he had already read the documents before filing them, and so this time was redundant and not compensable.

Plaintiffs also seek compensation for 22.5 hours of trial preparation on the eve of mediation, despite the fact that the case was never scheduled for trial, dispositive motions were pending on all claims, and the case settled at mediation. These time entries appear to be little more than a veiled attempt to pad the bills of counsel. Such time unnecessary time is clearly not compensable. *See Alvarado v. FedEx Corp.*, No. C 04-0098 SI, 2011 U.S. Dist. LEXIS 112997 60-61, n.24 (N.D. Cal. Sept. 30, 2011) (finding counsel's billing for trial preparation despite the fact that the court was still reviewing the parties' summary judgment motions and a trial date had been vacated "not credible"). Thus, the Court should, therefore, subtract 20.75 hours for Mr. Tran, and 1.75 hours for Mr. Luse from any fee award.

In their Motion, Plaintiffs also ask the Court to award them fees for 2.12 hours of time spent by Mr. Iwata preparing a motion to withdraw a deemed admission by Plaintiff Nichols. (ECF No. 106-1 at 10.) Plaintiffs sought to change one of Mr. Nichols' responses to Defendants' request for admission from admit to deny. This Motion was evidently necessary only because of Plaintiffs' own error or mistake and should not be billed to Defendants.

Similarly, Plaintiffs ask the Court to award them fees for 10.82 hours of attorney time (6.5 by Mr. Tran and 4.32 by Mr. Iwata) spent responding to Defendants' motion for sanctions

due to Mr. Coman's failure to attend his deposition.  This motion was necessary because of Plaintiff Coman's failure to attend his deposition, and because Plaintiffs' counsel failed to provide any reason for Mr. Coman's failure to appear when Defendants indicated that they intended to seek sanctions.  (ECF No. 75-3.)  Had Plaintiffs' counsel indicated, as they later did in their response to the sanctions motion, that Plaintiff Coman failed to appear due to medical reasons, Defendants would have rescheduled his deposition and not filed the Motion.  In any event, Defendants should not be forced to now pay Plaintiffs for this time.

3.    Numerous Time Entries Are Inconsistent with The Record, Calling into Question All of The Time Entries Submitted by Plaintiffs' Counsel

Perhaps most troubling, Plaintiffs' attorneys seek compensation for time spent doing things on certain days that unquestionably were not done on those days.  For example, Mr. Luse billed seven hours for the deposition of Dennis Pelczynski on May 4 and two days *later*, he billed 2 hours for the deposition prep for Mr. Pelczynski.  (ECF No. 106-5 at 15.)  On its face, this is troubling, but what is more troubling is that Mr. Pelczynski was deposed on February 5.  (Lauderdale Aff. ¶ 8.) Thus, this entry was clearly not created contemporaneous to the event.  Similarly, Mr. Luse billed 1.5 hours for deposition prep for David Black on May 9 and 4.5 hours for his deposition on May 10, but Mr. Black was deposed on February 11.  (ECF No. 106-5 at 6.)  And, yet a third time, Mr. Luse billed an hour for deposition prep for Rhodes Coman on May 7 and 4 hours for his deposition on May 8.  (ECF No. 106-5 at 22.)  However, though Mr. Coman's deposition was scheduled for May 8, he failed to appear and the deposition was adjourned after half an hour.  (Lauderdale Aff. ¶ 9; ECF No. 75-3.)  Notably, in response to Defendants' motion for sanctions, Mr. Coman stated that he was unable to attend his deposition (and presumably his deposition prep) due to his medical condition.  (ECF No. 82-3.)  Thus, Mr. Luse's time entry for these two dates is false and not compensable.

24

Mr. Tran's paralegal billed 2 hours of paralegal time at the rate of $125 an hour to prepare documents for mediation on September 24, 2013, well over a month *after* mediation occurred. (ECF No. 106-1 at 11.)   On October 3, 2012, Mr. Luse billed an hour for reviewing "pages of discovery sent by Defendants" and .1 hours on October 2 for the same thing, but the discovery responses were not mailed until two days later on October 4.  (ECF No. 106-4 at 7; Lauderdale Aff. ¶ 7, Ex. A.)  These entries for work performed on days where such work clearly was not performed are most certainly not compensable, and so another 21.1 attorney hours and 2 paralegal hours should be subtracted from any fee award to Plaintiffs. (Lauderdale Aff. Ex. H.) But, more importantly, these time entries raise serious questions and concerns about the accuracy and authenticity of all of the time entries.   These obvious errors indicate that the records of Plaintiffs' counsel were not contemporaneously created, but were manufactured after the fact to justify an award of fees.   It should be noted that Plaintiffs' counsel do not state in their three affidavits that their "billing records" were created contemporaneously with the work allegedly performed. (ECF Nos. 106-2, 106-3, 106-6.)  Accordingly, the Court should assign little weight to these records when considering Plaintiffs' Motion.

    4.    <u>Plaintiffs Spent an Unreasonable Number of Hours on Certain Aspects of This Litigation.</u>

    *a.*    *Summary Judgment Briefing*

In addition to seeking compensation for things that are not billable, Plaintiffs purported to bill an unreasonable amount of time on tasks that were otherwise billable.  "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  Most significantly, Plaintiffs' counsel billed 163.89 attorney hours for drafting their seven responses to Defendants' motions for summary judgment.  (Lauderdale Aff. Ex. I.)  That

amount included 108.61 hours for Mr. Iwata, 39.85 hours for Mr. Tran, and 15.43 hours for Mr. Luse.  (*Id.*)  This accounts for 21% of the total hours for which they seek compensation.

Plaintiffs attempt to justify this exorbitant amount of time by arguing that "Defendants' seven summary judgment motions were specific, detailed, and accompanied by voluminous exhibits . . . .   The Plaintiffs obligatory responses were of comparable substance."  (ECF No. 107-1 at 5.)  Plaintiffs' responses were not "specific" and "detailed."  Six of the seven responses were nearly identical.[13]  (ECF Nos. 76-81.)  Each was 15 pages long and contained verbatim legal arguments, differing only in a few of the recited facts and in two paragraphs in each brief—one that summarized each Plaintiff's claim for damages (which does not justify significant attorney time because these calculations were previously included in documents filed earlier with the Court, ECF Nos. 25-1 – 25-6), and a second paragraph that contained an example of a week in which each Plaintiff argued that he was not paid minimum wage.  The Supreme Court has advised that "hours that are not properly billed to one's client are . . . not properly billed to one's adversary pursuant to statutory authority."  *Hensley*, 461 U.S. at 434.   Here is it difficult to imagine Plaintiffs' counsel billing their clients for 161.81 hours of time spent on cookie cutter response briefs.  *Dormeyer*, 1999 U.S. Dist. LEXIS 12270 *15 (denying attorneys' fees for preparation of memorandum that was "largely generic" and "is a 'cut-and-paste' job lifted largely from previous memorandum"); *Spegon*, 989 F. Supp. at 991 (reducing fees for "cookie cutter" motion).

Accordingly, the Court should significantly reduce the amount of hours spent by

---

[13] The seventh response brief for Plaintiff Mark Nichols was filed after the others because there was delay in taking Mr. Nichols' deposition due to his involvement in a motorcycle accident. That response discussed some of the arguments from Defendants' initial reply briefs filed in connection with the other six Plaintiffs, but it certainly did not warrant the 46.46 attorney hours that Plaintiffs' counsel evidently spent working on it.  (ECF No. 93.)

Plaintiffs in responding to Defendants' summary judgment briefs.    Considering the *Barber* factors, including time required and the skill required to perform such tasks, Defendants maintain that a more reasonable number of hours spent preparing basically uniform response briefs is 30 hours, allocating 20 hours for Mr. Iwata, 5 for Mr. Luse and 5 for Mr. Tran.

Furthermore, the Court must not overlook the important fact that all of the hours spent responding to Defendants' motions for summary judgment could have been avoided.  The Parties had scheduled mediation (for August 1, 2013) before Plaintiffs' responses were due (on June 21, 2013) and counsel for Defendants offered to agree to an extension of time for Plaintiffs to respond until after mediation.  Stating specifically that such an extension "would save you the effort of responding until mediation is completed and a successful mediation could make that effort unecessary."  (Lauderdale Aff. ¶ 10, Ex. B.)  Plaintiffs rejected Defendants' offer and instead asked for a three-week extension of time to respond.  (ECF No. 72.)  Plaintiffs' counsel should not receive a windfall for performing work that could be avoided.

b.    *Mediation Preparation*

Plaintiffs' counsel also spent an unreasonable amount of time preparing for mediation. The time entries reflect a total of 56 attorney hours and 9.38 paralegal hours on mediation preparation alone.  (Lauderdale Aff. Ex. I.)  This time is in addition to the 21 hours that Mr. Tran spent preparing for trial during this same time period.  This includes 6.5 hours for Mr. Tran, 9.08 hours for Mr. Luse, and 40.42 hours for Mr. Iwata.  This amount of time is clearly excessive in light of the *Barber* factors and should be reduced to no more than 10 hours, 5 hours for Mr. Tran and 5 hours for Mr. Luse.

c.    *Responding to Defendant's Motion to Dismiss*

Plaintiffs' counsel also spent an unreasonable 67.23 attorney hours drafting their response

27

and corresponding affidavits in opposition to Defendant's initial motion to dismiss.  This includes 2.67 hours for Mr. Tran, 2.35 hours for Mr. Luse, and 62.21 hours for Mr. Iwata. (Lauderdale Aff. Ex. I.)  Though Plaintiffs contend that their response required them to consider novel and difficult issues, it did not justify the amount of time spent on it.  Accordingly, the Court should reduce the amount of time spent on this response to 14 hours, allocating 10 hours to Mr. Iwata, 2 for Mr. Tran, and 2 for Mr. Luse.

To summarize, the lodestar is calculated by multiplying a reasonable hourly rate by a reasonable number of hours.  Here, Plaintiffs seek compensation for 915.22 attorney hours, including 184 hours for Mr. Tran, 344.25 hours for Mr. Iwata, 246.64 hours for Mr. Luse, 95.83 hours for Mr. Tran's paralegal, and 44.50 hours for Mr. Luse's paralegal.  As described above, however, Plaintiffs' counsel billed hundreds of hours for things that are not chargeable to Defendants.  Plaintiffs' counsel also spent an unreasonable amount of time responding to Defendant's motion to dismiss, Defendants' motions for summary judgment, and preparing for mediation.  As the chart below makes clear, when these items are subtracted from the total number of hours billed, at most 119.73 hours of Mr. Tran's time, 127.09 hours of Mr. Iwata's time, 176.03 hours of Mr. Luse's time, 76.83 hours of Mr. Tran's paralegal's time, and 13.70 hours of Mr. Luse's paralegal's time, should be included in the lodestar.

| | Mr. Tran | Mr. Iwata | Mr. Luse | Mr. Tran's Paralegal ($125 per hour) | Mr. Luse's Paralegal ($80 per hour) |
|---|---|---|---|---|---|
| **HOURS BILLED:** | **184.00** | **344.25** | **246.64** | **95.83** | **44.50** |
| **DEDUCTIONS:** | | | | | |
| Administrative Time | - | - | 2.55 | 17.00 | 30.80 |
| Untimely Entries | - | - | 14.10 | 2.00 | - |
| Vague Entries | - | - | 15.55 | - | - |
| Duplicative Billing | - | 24.23 | 14.55 | - | - |
| Bright Lawsuit | - | - | 2.60 | - | - |
| Trial Prep | 20.75 | - | 1.75 | - | - |
| Motion to Withdraw Admission and Response to Motion for Sanctions | 6.50 | 6.44 | - | - | - |

| | | | | |
|---|---|---|---|---|
| Documents Reviewed After Filing | - | - | 1.30 | - | - |
| Other Unnecessary Time Entries | - | 5.25 | - | - | - |
| Unsuccessful Claims | - | - | 3.35 | - | - |
| **SUBTOTALS:** | **156.75** | **308.33** | **190.89** | **76.83** | **13.70** |
| Adjustment for Excessive time responding to MSJ | 34.85 | 88.61 | 10.43 | - | - |
| Adjustment for excessive time preparing for mediation | 1.5 | 40.42 | 4.08 | - | - |
| Adjustment for excessive time responding to motion to dismiss | .67 | 52.21 | .35 | - | - |
| **REVISED TOTAL:** | **119.73** | **127.09** | **176.03** | **76.83** | **13.70** |

When the more reasonable rate of $250 for Mr. Tran $175 for Mr. Luse and Mr. Iwata, and $80 - $125 for paralegal work is applied to these numbers, the proper lodestar amount for the first prong of the Fourth Circuit's analysis is $93,678.25.

## II.    Plaintiffs Should Not Be Compensated For Work on Unsuccessful Claims

Once the lodestar amount is determined, the second part of the analysis is to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Grissom*, 549 F.3d at 321 (*quoting Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). Here, Plaintiffs unsuccessfully pursued a collective action, and so any time associated with the collective action aspect of the litigation, including time spent on Plaintiffs' motion for class certification is not chargeable to Defendants. *See, e.g., Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 690-92 (N.D. Ill. 2012) (subtracting time spent on unsuccessful motion to certify FLSA collective action). Although Plaintiffs concede that they are not entitled to any fee for time spent on the motion for class certification, their time records contain entries related to this motion, and many other entries which were too vague to determine the subject matter. (ECF No. 107-1 at 12.) Mr. Luse's time records contain three entries related to the unsuccessful collective action claims, totaling 3.35 hours of attorney time. The first two are entries for legal research related to the collective action, the first for 2 hours on July 21, 2011, and the second for 1.25 hours on July 22, 2011. (ECF No. 106-4 at 19.) The third is for .1 hour on November 28, 2011 in which he

29

spent time gathering information on previous employees or potential class members. (Lauderdale Aff., Ex. J.)  Thus, an additional 3.35 hours from Mr. Luse should be deducted from the lodestar.

### III. Plaintiffs' Limited Degree of Success Warrants A Significant Reduction in Fees

"Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Grissom*, 549 F.3d at 321.  "'[T]he most critical factor' in determining the reasonableness of a fee award "is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (quoting *Hensley*, 461 U.S. at 436.)  "The Court has substantial discretion in making this equitable judgment." *Hensley*, 461 U.S. at 437.  Here, Plaintiffs and their attorneys enjoyed very limited success both on the claims that survived and were settled and the potential claims that were extinguished.  Accordingly, the Court should significantly reduce any remaining attorney's fee award to account for this limited success.

### A. The Lodestar Amount Should Be Reduced Because Plaintiffs Failed to Obtain Certification of a Collective Action

Plaintiffs' primary aim in filing this lawsuit was to represent a class of similarly situated current and former timeshare salespeople of Defendants.  The Complaint was titled, "PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT," and it included two specific sections devoted exclusively to collective action allegations, the evident goal of which was to secure certification of a collective action.  Defendant responded to this by serving offers of judgment on the four original Plaintiffs, which were vigorously contested by Plaintiffs' counsel, who expressed little interest in resolving their claims.  A few months later, on January 4, 2013, while Defendant's motion to dismiss was still pending, Plaintiffs moved to certify a class of timeshare salespeople under the FLSA.  (ECF No. 25.)  Thus, Plaintiffs' primary aim during

the first six months of this litigation was to obtain certification of a collective action. The Court denied Plaintiffs' motion on July 12, 2012, finding that Plaintiffs' claims were so varied that conditional certification would be improper. (ECF No. 33.) In other words, Plaintiffs failed to make the "modest factual showing" required for conditional certification of a collective action under the FLSA. *See id.*; *Purdham v. Fairfax County Pub. Schs.*, 629 F. Supp. 2d 544, 548 (E.D. Va. 2009) (describing standard for conditional certification).

Because Plaintiffs were unsuccessful in obtaining their primary goal a significant reduction in the lodestar is warranted. In *Barfield v. New York City Health and Hospitals Corp.*, the Second Circuit affirmed a district court's decision to reduce the lodestar amount by 50% based solely on the plaintiff's unsuccessful attempt to obtain certification of a collective action. *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 153 (2nd Cir. 2008). The court explained that where a plaintiff unsuccessfully pursued a collective action, not reducing the lodestar "would pose two risks: (a) decreasing the incentive for plaintiffs' lawyers vigorously to litigate collective action certification; and (b) encouraging plaintiffs' lawyers to file collective action-based claims even where there is little basis for doing so." *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132 (2nd Cir. 2008). Other district courts have similarly reduced the lodestar amount whether the plaintiffs were unsuccessful in obtaining a collective action. *See, e.g., Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 693 (N.D. Ill. 2012) (applying 33% reduction in case where only one other plaintiff opted in to collective action). Because Plaintiffs' counsel failed to obtain their primary goal of representing a class of similarly situated individuals, the Court should reduce the lodestar by at least 50%.

### B.    A Further Reduction in The Lodestar Is Warranted Because Plaintiffs Recovered Only A Fraction of What They Sought

The Supreme Court has described a plaintiffs' degree of success as the "most critical

factor" in determining an award of attorney's fees. *Farrar*, 506 U.S. at 114. "When considering the extent of the relief obtained, [the court] must compare the amount of the damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005). Fortunately, making such a comparison in this case is easy. Each Plaintiff's Response to Defendants' Motion for Summary Judgment contains a paragraph setting forth precisely how much that Plaintiff contends that he is entitled to in this lawsuit. (ECF Nos. 76 at 11; 77 at 11; 78 at 11, 79 at 10; 80 at 11; ECF No. 81 at 11, 93 at 18.) The total asserted value of all seven claims is $296,562.72. The Parties settled all seven claims for $55,000, or 18% of the alleged value of those claims. This fact, coupled with the fact that Plaintiffs were unsuccessful in pursuing a collective action warrants a significant reduction in the lodestar amount.[14]

Courts, including this Court, have significantly reduced the amount of attorneys' fees awarded where the Plaintiffs, as here, recovered only a fraction of the damages that they sought. For example, in *Monsanto v. Strickland*, 604 F. Supp. 2d 805, 820 (D.S.C. Feb. 9, 2009) (Harwell, J.), the Court, after considering the *Barber* factors, awarded $44,200 in fees where counsel requested over $400,000 based, in part, on the fact that the plaintiff was receiving only $44,000. In a case relied on by Plaintiffs in their brief, Judge Currie awarded a total of $22,424 in attorneys' fees in an FLSA case that actually went to trial, specifically reducing the lodestar by 33% "to compensate for the limited nature of Plaintiffs' success." *Harrison-Belk*, 2008 U.S. Dist LEXIS 67268 at *9-11. Other district courts in the Fourth Circuit have similarly reduced fee awards in FLSA cases where a plaintiff obtained limited success on their underlying claim.

---

[14] Plaintiffs try to salvage their attorneys' fee request by arguing, for the first time in this litigation, that they were actually awarded all the damages that they were entitled to using the fluctuating workweek method of calculating overtime. However, as discussed above, Plaintiffs have never before argued that the fluctuating workweek method of calculating overtime should be used in this case. Plaintiffs' cannot now claim "success" when they have previously clearly articulated precisely what their claims would look like if "successful."

S*ee, e.g., Andrade v. Aerotek, Inc.,* 852 F. Supp. 2d 637, (D. Md. 2012) (awarding $110,115 of the $287,000 requested by counsel in case that, unlike here, was successfully certified as a FLSA collective action and specifically reducing lodestar by 25% based on lack of success); (applying 25% reduction to lodestar "given the modest value of the plaintiffs' claims"); *Almendarez v. J.T.T. Enterprises Corp.*, No. JKS 06-68, 2010 U.S. Dist. LEXIS 88043 at *19-20 (D. Md. Aug. 25, 2010) (awarding $84,000 where $169,000 was requested in three-plaintiff case that went to trial and specifically reducing lodestar by 25% based on level of success as compared to the time expended by counsel).  Here, not only did Plaintiffs obtain only 18% of what they said they were entitled to, but they also failed to achieve one of their primary goals, which was to represent a certified class.  Thus, an even more significant reduction is the lodestar amount is warranted.

In addition to recovering only a fraction of the damages sought, Plaintiffs are also asking the Court to award them six times more than their own clients received.  Though not determinative of an award of attorney's fees, "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded . . . ." *Jackson v. Estelle's Place, LLC*, 391 Fed. Appx. 239, 244 (4th Cir. Aug. 12, 2010).  Courts have applied an additional reduction to the lodestar amount where the fees sought are disproportionate to the amount the plaintiffs received.  *See, e.g., Gionfriddo v. Jason Zink, LLC*, No. RBD-09-1733, 2011 U.S. Dist. LEXIS 76931 at *9 (D. Md. July 15, 2011) (finding evidence that amount of attorney's fees is unreasonable where fees accounted for 87% of the settlement and denying motion to approve settlement).  In fact, this Court has previously reduced the amount of attorneys' fees awarded based on the proportionality of the benefit to the plaintiff.  *See Monsanto*, 604 F. Supp. 2d at 820 (awarding $44,200 in fees where counsel requested over $400,000 based on fact that plaintiff was receiving only $44,000).

In short, Plaintiffs' counsel are asking the Court to award them six times more than their clients received in this case even though their clients received only 18% of what they claim to have been entitled to and even though they failed to obtain their goal of representing a class of similarly situated individuals. Stated simply, Plaintiffs' counsel was not successful in obtaining the result that they wanted, and, thus, the Court should reduce the lodestar amount by 80%. This would produce an award of fees in the amount of $18,735.65 which is more than what Plaintiffs' counsel expected to receive when they took this case on a contingency fee basis.

### C.    Costs

Finally, Plaintiffs ask the Court to award their attorneys $13,499.88 in costs. In general, plaintiffs who are entitled to fees may recover "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). These costs include copying, telephone costs and necessary travel." *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir. 1978). Many of the costs for which Plaintiffs' seek compensation are not recoverable. Some costs are too vague to justify any recovery, including costs totaling $1,069.86 for "online research," "online legal research" and "pacer research," (ECF No. 106-1 at 11-12), a $1,050 "administration fee" by Mr. Luse, as it is unclear what this charge relates to, (ECF No. 106-5 at 26), and $1,500 in "copy costs" (ECF No. 106-1 at 12). Defendants further object to the payment of the pro hac vice filing fees for Mr. Tran and Mr. Iwata, totaling $500, as well as Plaintiffs' $1,757.50 portion of the mediator's fee. (ECF No. 106-5 at 26; 106-1 at 11-12.) Defendants also object to paying the excessive fees incurred by Mr. Tran in traveling to Myrtle Beach from Houston for one day of mediation. These costs include mileage in the amount $1,326.62 (he had previously incurred only $394.10 when flying to Myrtle Beach), and hotel

lodging for <u>four</u> nights totaling $1,243.39.    As Mr. Luse attended the mediation and Mr. Tran could have participated by telephone, not only are these costs excessive for a single day mediation, but they cannot be considered "necessary travel," and, thus, are not recoverable. Thus, the Court should subtract $8,447.37 from any award of costs to Plaintiffs' counsel.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' request for attorneys' fees. In the event that the Court determines that some award of fees is appropriate, that amount should not exceed $18,735.65, which represents the lodestar amount based on a reasonable rate and a reasonable amount of time, reduced, as required by controlling Fourth Circuit authority, to account for Plaintiffs' limited degree of success.  Notably, this amount is more than the $18,333 that Plaintiffs' counsel expected to receive when they took this case on a contingency basis.

Respectfully submitted,

*s/D. Christopher Lauderdale*
D. Christopher Lauderdale (Fed. Bar No. 9051)
T. Chase Samples (Fed. Bar No. 10824)
JACKSON LEWIS LLP
One Liberty Square
55 Beattie Place, Suite 800
Greenville, South Carolina 29601
Telephone: 864-232-7000
Facsimile: 864-235-1381
Email: lauderc@jacksonlewis.com
           chase.samples@jacksonlewis.com

ATTORNEYS FOR DEFENDANTS

This the 17th day of October, 2013.