IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Dennis Pelczynski, David Black, ) | Civil Action No.: 4:11-cv-01829-RBH |
| Michael Anderson, Rhodes Coman, ) | |
| Marc Nichols, Daniel Schmidt, and ) | |
| John Vinson, ) | |
| ) | **ORDER** |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Orange Lake Country Club, Inc., and ) | |
| OLCC South Carolina, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

        Plaintiffs filed this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§

201 to 219 ("FLSA") on July 27, 2011.  The parties settled Plaintiffs' claims, with the exception of

attorney's fees and costs, and the Court approved the settlement on September 12, 2013, holding in

abeyance the unsettled issue of attorney's fees and costs.  Plaintiffs timely filed a motion for

attorney's fees and costs on September 26, 2013, Mot. for Attorney's Fees, ECF No. 106, and

Defendants' responded, Resp. to Mot. for Attorney's Fees, ECF No. 114.  After reviewing

Plaintiffs' motion and the briefs of all parties, the Court dispenses with oral arguments.[1]  For the

reasons that follow, the Court grants in part and denies in part Plaintiffs' motion.

                    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

        Plaintiffs were timeshare salesmen for Defendants in Myrtle Beach, South Carolina, and

their duties included giving prospective buyers tours of the properties and obtaining contracts.  They

were compensated primarily by commission; however, they were guaranteed a "draw" pay of $10

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its
discretion. Unless so ordered, motions may be determined without a hearing."  The Court finds a
hearing is not necessary.

per hour.[2]   In their amended complaint, they alleged Defendants had a policy of not paying them overtime pay and minimum wages, even though Defendants were aware they worked overtime hours.  Plaintiffs sought a collective action and payment of overtime wages, liquidated damages under the FLSA, and attorney's fees and costs.

In over two years, this action involved multiple motions filed with the Court.  Defendants filed a motion to dismiss Plaintiffs' complaint based on offers of judgment it made to each Plaintiff pursuant to Rule 68 of the Federal Rules of Civil Procedure.   Plaintiffs filed a motion to conditionally certify a collective action to include plaintiffs similarly situated to them.  This Court denied both motions.  As a result of the Court's rulings, Plaintiffs attempted to amend their complaint to add several new plaintiffs.[3]  Defendants, however, opposed the addition of new plaintiffs.  They, moreover, moved to sever the existing Plaintiffs on the ground that joinder was inappropriate.  The Court noted that, "while severance may be technically proper," overlapping factual and legal questions and judicial economy warranted consolidation for "discovery and trial purposes" under Rule 42(a) of the Federal Rules of Civil Procedure.  The Court denied Plaintiffs' motion to amend and denied Defendants' motion to sever *without prejudice*.  Seven separate motions for summary judgment were thereafter filed by Defendants, respective to each Plaintiff, and each Plaintiff responded.[4]   The parties ultimately settled their differences at mediation—the only exception being Plaintiffs' claims for attorney's fees.  Defendants agreed Plaintiffs would be

---

[2] Generally, Plaintiffs' claimed that their pay was based on a complex "chargeback" calculation, accounting both for sales and for hours worked.  If Plaintiffs' commissions did not exceed the hourly draw amount for the week, they were guaranteed the latter.  Any amount Defendants had to pay to meet the draw amount would be deducted from future commissions.  Plaintiffs, who were non-exempt employees under the FLSA, were thus ensured payment in compliance with the FLSA, at least in theory.  Commissions earned, however, were charged back if buyers failed to make payments to Defendants.

[3] Three Plaintiffs, Marc Nichols, Daniel Schmidt, and John Vinson, were added as plaintiffs by way of an earlier amendment to the complaint without opposition by Defendants.

[4] Other major motions filed included a motion for sanctions filed by Defendants and a motion to withdraw an admission filed by Plaintiff Marc Nichols.  The Court never ruled on these motions.

entitled to fees and costs under the FLSA as prevailing parties.  The amounts, however, were in dispute.  That dispute is now before the Court for adjudication.

## ATTORNEY'S FEES

The Court's decision in awarding an amount of attorney's fees to a prevailing party turns on the reasonableness of the request, including the number of hours worked and the billing rate assessed.  "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  All seven Plaintiffs together request a total of $309,110.63 in attorney's fees and costs.  That total sum includes fees for work performed by three attorneys and four paralegals amounting to $295,610.75, as well as expenses totaling $13,499.88.  Plaintiffs submitted invoices itemizing the work of three attorneys and their paralegals.  Plaintiffs' attorneys were Trang Q. Tran and Andrew H. Iwata of the Tran Law Firm, L.L.P. in Houston, Texas, and William J. Luse of Myrtle Beach, South Carolina.  It is, therefore, with these bottom-line numbers presented by Plaintiffs that the Court begins its analysis.

In *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), the Fourth Circuit recently summarized the proper standard and procedure for making an attorney's fee award as follows:

> The proper calculation of an attorney's fee award involves a three-step process.  First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.  To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.* . . .  Next the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones.  Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

(internal quotation marks and citations omitted).  To determine the reasonable number of hours and the reasonable rate to use in calculating the lodestar, the Court is guided by twelve non-exclusive

factors.  These "*Johnson/Barber*" factors, which have been approved by the Supreme Court and

embraced by the Fourth Circuit are as follows:

> (1) The time and labor expended; (2) the novelty and difficulty of the
> questions raised; (3) the skill required to properly perform the legal
> services rendered; (4) the attorney's opportunity costs in pressing the
> instant litigation; (5) the customary fee for like work; (6) the
> attorney's expectations at the outset of the litigation; (7) the time
> limitations imposed by the client or circumstances; (8) the amount in
> controversy and the results obtained; (9) the experience, reputation,
> and ability of the attorney; (10) the undesirability of the case within
> the legal community in which the suit arose; (11) the nature and
> length of the professional relationship between attorney and client;
> and (12) attorneys' fees awards in similar cases.

*Id.* at 88 n.5.  These factors were first adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*,

577 F.2d 216, 226 (4th Cir. 1978).[2]  While the Fourth Circuit states the sixth factor as relating to the

attorney's expectations at the outset of the litigation, other courts, including the Supreme Court,

consider whether the fee was fixed or contingent. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3

(1983); *Johnson v. Ga. Highway Express*, 488 F.2d 714, 718 (5th Cir. 1974).  The difference is one

of semantics.

## I.     Determination of the Lodestar Figure

Arriving at the lodestar figure is the first step this Court must make in ultimately

determining a reasonable attorney's fee.  With Plaintiffs' motion, both law firms representing

Plaintiffs submitted invoices accounting for a total of 915.22 hours of time billed.  That time

includes 140.33 hours of time billed by the attorneys' paralegals. The affidavits of Mr. Tran and Mr.

Luse attest that their hourly rates are $400 per hour and $350 per hour, respectively.  Mr. Tran

charges a rate of $350 per hour for his associate, Mr. Iwata, and $125 an hour for his paralegals'

work.  Mr. Luse charges $80 per hour for the work of his paralegals.  Defendants object to both the

---

[2] The local rules in this district require that "[a]ny petition for attorney's fees . . . comply with the
requirements set forth in *Barber* . . . ." Local Civil Rule 54.02 (D.S.C.).

amount of hours and the rates billed by Plaintiffs' attorneys in this action.  Accordingly, this Court must assess the arguments and evidence presented in light of the *Johnson/Barber* factors listed above, doing so in order they are listed.

*Time and Labor Required*.  The procedural history discussed above by the Court provides a rough timeline of this action, which proceeded on the Court's docket for over two years.  As Plaintiffs point out in their motion, this case required discovery for seven individual plaintiffs, including attending eight depositions.  There were also several dispositive motions filed, including separate motions for summary judgment addressing the claims of each Plaintiff.  All of Plaintiffs' attorneys' work culminated in a mediation, which succeeded in a resolution of the case.  The Court, therefore, is cognizant that Plaintiffs' attorneys necessarily expended significant time and labor in litigating this action.[5]  The Court cannot overlook its previous rulings that this action was really seven separate actions that required an individualized treatment of each Plaintiff.  Much of the work billed by Plaintiffs is justified and reasonable.  However, as the Defendants point out and as the Court more thoroughly addresses below, Plaintiffs spent an unreasonable amount of time performing certain services—responding to Defendants' seven motions for summary judgment and preparing for mediation, for example. *See supra* pp. 12–14.

*Novelty and Difficulty of the Questions Raised*.  Plaintiffs alleged in their amended complaint that they did not receive adequate overtime pay or minimum wages as a result of their work off the clock and of Defendants' pay formula.  Plaintiffs' allegations that they worked for

---

[5] Plaintiffs concede that their attorneys should not be compensated for the time and labor related to the unsuccessful motion for the conditional certification of the collective action.  Indeed, the fact that this action never became a collective action has significance for several of the *Johnson/Barber* factors—for a collective action would require attorneys with considerable skill and experience and who could manage the greater time and labor necessary.  That is not to say, however, that the attorneys involved lack that skill and experience.  The Court only notes this because what ultimately resulted here were individual FLSA claims rather than an FLSA collective action demanding managment.

periods of unrecorded time create inherent problems of individual proof. Indeed, the difficulty of proving the time worked by Plaintiffs was one basis for this Court's finding that the proposed class of plaintiffs was not similarly situated to the original Plaintiffs named in this action, as well as for the denial of Plaintiffs' motion for the conditional certification of a collective action. Plaintiffs argue that the issues raised by Defendants in their motion to dismiss and their motion to sever were novel and complex, and justified the amount of time expended and the rates charged. Defendants reject Plaintiffs' characterization in their response. The Court, however, gives Plaintiffs the benefit of the doubt, having already addressed these novel issues in previous orders. The issues raised in this action—concerning offers of judgment in the context of collective actions and the relationship between joinder and collective actions—were issues that had not been adequately addressed by courts in the Fourth Circuit. There were thus sufficiently novel and difficult issues to warrant the Court's attention.

*Skill Required to Properly Perform the Legal Services Rendered.* The pursuit of relief for a violation of an FLSA claim requires some specialized knowledge of employment law, a specialized area on its own. As Plaintiffs point out, employment law does not make up the core courses required for a law degree. However, as noted in footnote five, the fact this action was never certified as a collective action suggests a lesser degree of skill required. Defendants, moreover, submitted the affidavit of Vance J. Bettis, a Columbia, South Carolina, attorney who has litigated dozens of cases in the Florence Division. Mr. Bettis, a certified specialist in employment and labor law, attests that attorneys who have practiced in the specialty for over thirty years charge rates "from $150 to $250 per hour." Plaintiffs' attorneys, who have attended relevant workshops and practiced employment and labor law throughout each of their careers, never attested that they were certified as specialists in the practice area. The Court, therefore, recognizes that litigating

individual FLSA claims requires some specialized understanding of employment and labor law; however, the Court is not convinced that the legal services rendered in this case require skill valued at the rates Plaintiffs seek.

*Attorney's Opportunity Costs in Pressing the Instant Litigation*.  Plaintiffs ask the Court to consider the fact that they practice in small firms and that they were required to give up other work that they could have billed at their requested rates on other cases.  Defendants respond that the fact that Mr. Tran and Mr. Iwata practice in Houston and may be giving up work at the higher rates charged in the Houston community should not be part of the Court's analysis.  Moreover, Defendants point out that Plaintiffs' attorneys do not attest in their affidavits that they have actually been awarded the rates they seek.  The fact that Mr. Tran and Mr. Iwata may be giving up other work at these rates has some relevance to this factor; however, attorneys possessing the skill to litigate individual FLSA claims arising in the Florence Division community are not so few as to require the participation of Houston-based attorneys.  There is no specific reason given for the association of Mr. Tran and Mr. Iwata, suggesting that their participation had more to do with the potential collective action, which was never certified.[6]   Other than the fact that Plaintiffs' attorneys practice in small firms and had to give up other work, there is little specific information offered by Plaintiffs regarding this factor.  Accordingly, this factor weighs against awarding Plaintiffs' attorneys the full rates requested.

*Customary Fee for Like Work*.  Evidence of customary fees charged for like work was presented by the parties in the form of affidavits of practicing attorneys with personal knowledge of the reasonable rates in the relevant community.  As noted above, Defendants provided the affidavit of a certified specialist in employment and labor law (Mr. Bettis) who attests that customary fees

---

[6] There is no evidence Mr. Tran or Mr. Iwata had a prior relationship with any of the plaintiffs that would explain their participation.

range from $150 per hour to $175 per hour for an attorney who has practiced since 2005 and $150 per hour to $250 per hour for an attorney who has several decades of experience. Plaintiffs likewise provide affidavits of two attorneys who practice in the area of employment and labor law to support their attorneys' fees. Both attorneys, Todd Ellis of Columbia and John Leiter of Myrtle Beach, did not claim to be certified specialists in employment and labor law; however, they explained that the rates charged by Plaintiffs' attorneys are reasonable rates charged by attorneys who practice employment and labor law with similar skills and experience. Therefore, evidence exists to support the rates argued by Plaintiffs and Defendants, and the Court must assess these ranges against the other factors discussed.

*Attorney's Expectations at the Outset of the Litigation.* In the motion now before the Court, Plaintiffs seek attorney's fees from Defendants in the form of billable hours. At the outset of this litigation, however, Plaintiffs and their attorneys executed a contract providing for a contingency fee arrangement. Plaintiffs point out that, despite the previous fee arrangement, an attorney should not be limited to a fee calculated on a contingent or percentage basis in seeking awards under the FLSA. The Court will not limit Plaintiffs' attorneys to a contingency fee arrangement; however, such an arrangement is relevant to the expectations of the attorneys at the outset of the litigation. *See Lyle v. Food Lion*, 954 F.2d 984, 988 (4th Cir. 1992). As Plaintiffs and Defendants point out in their briefs, Plaintiffs claimed they were entitled to damages totaling $296,572.62. Assuming those damages were realized after trial, Plaintiffs' attorneys reasonably expected to be entitled to a percentage of such an award. This case, however, did not proceed to trial. Instead, it settled for a total sum of $55,000.00. If this Court were to account for a reasonable percentage of Plaintiffs' expected damages, the fees now sought by Plaintiffs far exceed their attorneys' expectations. Such a factor, then, weighs heavily against the fees sought by Plaintiffs in this motion.

*Time Limitations Imposed by the Client or Circumstances*.  Plaintiffs present no evidence of any time limitations imposed on their attorneys by them; however, they point out in their brief the difficulty of having to respond to six motions for summary judgment filed on the same day.  The Court recognizes the difficulty in having—and amount of labor required—to respond to several motions at once.  The labor of several attorneys, therefore, may have been needed to meet the deadlines imposed on Plaintiffs.

*Amount in Controversy and Results Obtained*.  As noted above, the damages demanded by Plaintiffs in this case were substantial.  Plaintiffs stress that the results obtained—a settlement of $55,000.00—should be considered in light of the initial offers to the original four Plaintiffs by Defendants.  Specifically, Defendants offered the original Plaintiffs—Plaintiffs Dennis Pelczynski, David Black, Michael Anderson, and Rhodes Coman—together a total sum of $3,094.02. Defendants, on the other hand, emphasize the high demand that was claimed by Plaintiffs as late in the litigation as their responses to the motions for summary judgment.  There is no question that Plaintiffs received a settlement significantly lower than the damages they alleged they were entitled to.  There, however, can be no getting around the fact that each Plaintiff received a fair and substantial settlement.  The work of Plaintiffs' attorneys, therefore, should not be discounted simply on the premise that they obtained far less than they expected or sought.  But for an award of attorney's fees allowed under the FLSA, many meritorious cases may not be prosecuted simply because of the small amounts in controversy.  Instead, the attorneys' work should be balanced against all factors, including the reality that FLSA claims may understandably require a significant amount of work by an attorney to obtain relief quite significant to the individual plaintiff who had been wronged.

*Experience, Reputation, and Ability of the Attorney*. Plaintiffs' attorneys submitted affidavits to support their respective experience and reputations. Mr. Luse has practiced law for eight years, and has a full time practice in the Myrtle Beach area. Mr. Luse's experience includes prior civil litigation in the area of employment law and employee wages. Mr. Tran has practiced law for seventeen years, with substantial experience in employment law cases. Mr. Luse and Mr. Tran are both members of the National Employment Lawyers Association and are both graduates of the Trial Lawyers' College training courses in Wyoming. Mr. Iwata, Mr. Tran's associate, has practiced law for eight years, with the majority of his experience in employment law cases. In light of this experience, as well as the personal knowledge of Mr. Ellis and Mr. Leiter regarding Mr. Luse's reputation in the community, the Court finds Plaintiffs' attorneys have sufficient experience, reputation, and ability to justify the fees customary for attorneys performing similar work in the community.

*Undesirability of the Case Within the Legal Community in Which the Suit Arose*. This Court has previously observed that "[m]any attorneys consider employment law cases to be undesirable due to the fact that they require special expertise and have many risks." *Smith v. Voorhees College*, No. 5:05-cv-01911-RBH, 2008 WL 2627471, at *5 (D.S.C. June 27, 2008). The typical plaintiff in an employment case has little or no money with which to hire a lawyer or pay for legal expenses. Furthermore, as the Court has already discussed above, employment law is not part of the mandatory curriculum in law school and difficult questions of proof can lead to significant legal work to obtain results that, for some, may seem insignificant. Plaintiffs' attorneys, therefore, should be awarded a fee that accounts for necessary work performed in light of the complexity and inherent risks involved in employment litigation.

10

*Nature and Length of the Professional Relationship Between Attorney and Client*. Plaintiffs present no evidence of a professional relationship existing between the attorneys and Plaintiffs before the filing of this action; however, the Court notes the action lasted over two years.

*Attorney's Fee Awards in Similar Cases*. The parties present several similar cases for this Court to consider. Plaintiffs cited orders from two district courts in Texas. Those courts found a rate of $450 per hour to be a reasonable rate for a senior plaintiff's counsel in a suit under the FLSA. *See Villegas v. Regions Bank*, No. H-11-904, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013); *Black v. SettlePou, P.C.*, No. 3:10–CV–1418–K, 2012 WL 3638681, at *4 (N.D. Tex. Aug. 24, 2012). The only case cited by Plaintiffs from the District of South Carolina awarded the plaintiffs' attorneys a rate of $290 per hour. *See Harrison-Belk v. Rockhaven Comm. Care Home, Inc.*, No. 3:07-cv-00054-CMC, 2008 WL 2952442, at *2 (D.S.C. July 31, 2008). Plaintiffs distinguish the rate in *Harrison-Belk*, arguing that the case was decided in 2008. Defendants, on the other hand, rely on several orders issued by courts in the District of South Carolina in employment cases. They first point to this Court's order awarding attorney's fees in *Smith*. 2008 WL 2627471, at *4–5. There, the Court awarded a forty-nine-year veteran attorney with twenty-nine years of trial advocacy teaching experience the rate of $250 per hour in a case that went to trial. *Id.* In other employment cases in the district, an employment attorney was awarded a rate of $300 per hour and $200 per hour for her co-counsel. *Atkinson v. House of Raeford Farms, Inc.*, 6:09-cv-01901-JMC, 2012 WL 2923246, at *3 (D.S.C. July 18, 2012), *rev'd on other grounds sub nom. Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95 (4th Cir. 2014). Defendants finally cite *Harrison-Belk*, an FLSA case that went to trial. There, the court awarded an employment attorney—who had extensive experience and was a certified specialist in employment and labor law—an hourly fee of $290 case that also went to a jury trial. 2008 WL 2952442, at *2. Plaintiff's failure to cite similar

11

cases from this district is telling.  These cases better support the rates argued by Defendants.  Accordingly, this final factor weighs in Defendants' favor.

With the *Johnson/Barber* factors in mind, the Court now turns to the hours and the rates billed by the attorneys representing Plaintiffs.  To establish the number of hours reasonably expended, the attorney "should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433.  The number of hours should be reduced to exclude "hours that are excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. *Id.* at 434.  Again, Plaintiffs' attorneys in this case, as well as the paralegals, billed for a total of 915.22 hours.  Plaintiffs submitted evidence to support those hours worked.  However, Defendants, in their response, question the *reasonableness* of many of those hours.  This Court, then, must review Plaintiffs' attorneys' hours in light of Defendants' objections.  In their brief, Defendants categorize their several objections to Plaintiffs' attorneys' hours, grouping the hours they find objectionable into five categories.  The categories are: (1) administrative or secretarial time entries (50.35 hours); (2) vague or ambiguous time entries (15.55 hours); (3) duplicative time entries (38.78 hours); (3) other billable time entries (44.59 hours); (4) time entries billed on dates they could not have occurred (16.10 hours); and (5) excessive billing in responding to Defendants' motions to dismiss and for summary judgment, and preparing for mediation (296.50 hours).

The Court has reviewed the exhaustive itemization of time entries challenged by Defendants.  In an effort to avoid ruling on an item by item basis, the Court notes that Plaintiffs' attorneys' time entries shall be deemed appropriate and reasonable if not specifically addressed by the Court; however, Defendants bring to light several time entries that are inappropriate and unreasonable in light of the *Johnson/Barber* factors discussed above.  First, Plaintiffs submit 47.80 hours of paralegal time that Defendants identify as administrative or secretarial work that should not

be paid by a client.  After reviewing the items, the Court finds a fifty percent reduction is appropriate to account for the fact that some—but not all—work performed was simply administrative or secretarial.  The Court will, therefore, subtract 23.90 hours of paralegal time.  Second, Defendants object to Mr. Iwata's 8.40 hours of participation at the mediation via telephone as duplicative.  Both Mr. Tran and Mr. Luse physically attended the mediation.  The Court finds the attendance of three attorneys at the mediation is unreasonable and will thus subtract 8.40 hours of Mr. Iwata's time.  Third, Defendants point to time entries of Mr. Luse connected with plaintiffs who are associated with a different but related FLSA action.  Because these entries do not concern this action, the Court shall subtract an additional 2.60 hours from Mr. Luse's time.

Most of the hours Defendants object to are on the basis that they were excessive.  Specifically, Defendants object to hours billed relating to Plaintiffs' responses to several motions filed by Defendants and preparation for the mediation.  After reviewing the hours identified by Defendants, the Court finds that Plaintiffs' attorneys spent an unreasonable amount of time responding to the seven motions for summary judgment and preparing for the mediation.  Plaintiffs' attorneys billed 163.89 hours drafting the seven responses to Defendants' motions for summary judgment.  Each response was fifteen pages long and contained the same legal arguments, differing only in the individual facts specific to each Plaintiff.  In light of the *Johnson*/*Barber* factors discussed above, the Court finds an appropriate amount of hours for work on Plaintiffs' responses is 115 hours—25 hours for the first response and 15 hours for the six remaining responses.  Plaintiffs also submitted invoices showing that their attorneys and paralegals spent 65.38 hours preparing for the mediation.  The Court finds half of the amount (32.69 hours) to be reasonable.  In all, the Court finds deductions of 87.89 attorney hours and of 28.59 paralegal hours is reasonable and appropriate.  Those deductions reduce the amount of total hours from 915.22 to 798.74, and provide the amount

the Court shall use in determining the lodestar figure. Of course, the Court must still ascertain the appropriate rates to apply to that amount of hours.

The hourly rates included in a request for attorneys' fees must also be reasonable. *Hensley*, 461 U.S. at 433. A reasonable hourly rate is defined as "the 'prevailing market rate[] in the relevant community.' " *Rum Creek Coal Sales, Inc. v. Capertion*, 31 F.3d 169, 175 (4th Cir. 1994). The relevant community for determining the prevailing market rate is generally the community in which the court where the action is prosecuted sits. *Id.* This determination is fact intensive and the Court may look to what attorneys earn from paying clients for similar services in similar circumstances. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." *Rum Creek Coal Sales*, 31 F.3d at 175.

As indicated above, Plaintiffs seek $400 per hour for Mr. Tran's work and $350 per hour for the work of Mr. Luse and Mr. Iwata. Because the Court discusses the experience of the attorneys and the comparable rates in the community above, it need not elaborate on them any further. Indeed, based on the discussion above, the Court finds the rates charged by each of the attorneys to be unreasonable for comparable work in the Florence Division community. The fact that Mr. Tran and Mr. Iwata reside in Houston should not justify a higher rate. As Mr. Luse has shown from his work on this case, attorneys in the community are fully capable of performing the work necessary to obtain the relief to which Plaintiffs were entitled. The Court has considered the affidavits submitted by Plaintiffs; however, it finds the ranges provided by Mr. Bettis are more representative of the prevailing rates in the community. With the affidavit of Mr. Bettis, Defendants have shown that skilled attorneys in the community bill at rates much lower than what Plaintiffs seek in their motion.

This is also consistent with the undersigned's general knowledge of rates in the community. Accordingly, the Court finds that rates of $250 per hour for Mr. Tran's work and $175 per hour for the work of both Mr. Luse and Mr. Iwata reflect customary rates for attorneys having comparable skills and experience in the relevant community. Furthermore, while Defendants object to many of the hours billed by the paralegals in this action, they do not specifically challenge the rates charged for paralegal work (nor do they propose reasonable rates). Therefore, the Court finds $125 per hour for Mr. Tran's paralegals and $80 per hour for Mr. Luse's paralegals to be reasonable rates. Applying these reasonable rates to the reasonable hours ascertained above, the Court arrives at a lodestar figure of $145,606.75.[7]

## II.    Determination of Unsuccessful Claims Related to Successful Claims

Plaintiffs concede in their motion that their attorneys should not be compensated for the unsuccessful motion for the conditional certification of a collective action and unsuccessful motion for leave to amend their complaint to add plaintiffs. Consistent with their concession, their attorneys did not submit their hours for work on those motions. Defendants, however, have

---

[7] Some explanation of how this figure was calculated is necessary. In arriving at this amount, the Court simply grouped individuals billing at the same rate and deducted the time it found unreasonable from the total time attributed to each rate group. The exception came in calculating the attorney work related to the responses to the motions for summary judgment. As Mr. Tran did approximately 25% of the work on the responses, he was credited for 25% of the 115 hours the Court found reasonable (28.75 hours). Mr. Tran's hours were then reduced by the difference between the hours originally billed (39.85 hours) and the hours the Court found to be reasonable (a reduction of 11.10 hours). The same formula was used in determining the reduction in Mr. Luse's and Mr. Iwata's hours, which constituted the remaining 75% of the time spent on the responses (a reduction of 37.79 hours). The following chart provides a breakdown of the total time reductions:

| Rate Group | Hours Submitted | Reduced Hours | Reasonable Hours |
|---|---|---|---|
| Mr. Tran ($250) | 184.00 | -14.35 | 169.65 |
| Mr. Luse/Mr. Iwata ($175) | 590.89 | -73.54 | 517.35 |
| Mr. Tran's Paralegals ($125) | 95.83 | -13.19 | 82.64 |
| Mr. Luse's Paralegals ($80) | 44.50 | -15.40 | 29.10 |
| **Total** | **915.22** | **-116.48** | **798.74** |

identified an additional 3.35 hours billed by Mr. Luse for "gathering information for additional plaintiffs" and conducting legal research related to the filing of a class action. The Court finds these entries identified by Defendants are connected with the unsuccessful claims conceded by Plaintiffs. Accordingly, the lodestar figure must be reduced by $586.25 (3.35 hours × $175 per hour).

### III.    Determination of Percentage Depending on Plaintiffs' Degree of Success

The final step of the Court's analysis involves a determination of the degree of success enjoyed by the plaintiff." " '[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). "The Court has substantial discretion in making this equitable judgment." *Hensley*, 461 U.S. at 437.

Plaintiffs do not address this third step as a separate step in their brief. Instead, they refer to their degree of success as part of their argument under the *Johnson/Barber* factors, specifically the "results obtained" factor.    Under that factor, they argue that their attorneys obtained a substantial degree of success when Plaintiffs together received a total settlement of $55,000.00. They point out that Defendants only offered the four original Plaintiffs a total sum of $3,094.02.[8] Defendants, on the other hand, discount the degree of success obtained by Plaintiffs. Defendants note that Plaintiffs claimed in their responses to the motions for summary judgment that they were together entitled to a total sum of $296,572.62. Defendants, moreover, argue that the fact that Plaintiffs failed to obtain certification of a collective action should be factored into step three. When comparing the lofty claims of Plaintiffs and the paltry offers of Defendants with the ultimate settlement amount, the Court finds a reduction of fifty percent is fair and equitable for the middling degree of success that Plaintiffs enjoyed against the backdrop of what they alleged they were entitled to receive at the

---

[8] The four original Plaintiffs claimed in their response to Defendants' motion to dismiss that they together were entitled to a recovery of $116,290.56.

beginning of this action.  This equitable percentage reduces the $145,020.50 figure after step two to $72,510.25.  In sum, the Court notes this final amount, allocated among the seven plaintiffs (a little over $10,000 each), provides a fair and reasonable fee for the litigation—and ultimate settlement— of a FLSA claim in the relevant community.

### COSTS

Both Mr. Tran's and Mr. Luse's law firms submitted itemizations of legal costs totaling $13,499.88.  The costs include legal research costs, travel costs, court filing fees, and transcript fees.  They also include half of the payment to the mediator.  Defendants argue many of the costs submitted by Plaintiffs are not recoverable.  They object on the basis of vagueness to the legal research costs, copying costs, and a $150 administrative fee for each Plaintiff.  They object to several travel expenses as excessive.  Finally, giving no reason, they object to several court filing fees (pro hac vice application fees) and the payment to the mediator.   The Court has reviewed the costs submitted by Plaintiffs.  In general, plaintiffs who are entitled to fees may recover "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).  These costs include copying, telephone costs and necessary travel. *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir. 1978).  Despite Defendants' objections, the Court finds all of Plaintiffs' costs reasonable, with the exception of three items submitted by Mr. Luse for "client" meals.  Mr. Luse billed a total of $136.88 for lunches at Jimmy Johns and for dinner at T-Bonz.  These costs were not reasonable in the course of providing legal services, especially in light of the fact that Mr. Luse's clients were seeking attorney's fees and costs from Defendants. Accordingly, the Court finds an award of $13,363.00 for reasonable legal costs is appropriate.

## Conclusion

**IT IS THEREFORE ORDERED** that Plaintiffs' motion for attorney's fees (ECF No. 106) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs  shall  be  entitled  to  an  award  of attorney's fees totaling $72,510.25 and to an award of costs totaling $13,363.00.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

May 20, 2014
Florence, South Carolina